THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:14-cr-306-MHT-WC |
| | ) | |
| JOHN W. MITCHELL | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is Defendant's Motion to Strike Surplusage (Doc. 55), the Government's Response (Doc. 65), and Defendant's Reply (Doc. 66). For the reasons that follow, the undersigned RECOMMENDS that the motion be DENIED.

Defendant moves the court to strike as surplusage paragraphs 24, 25, and 26 of the Indictment pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure. Def.'s Mot. (Doc. 55) at 1. Rule 7(d) provides, "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." "A motion to strike surplusage from an indictment should not be granted unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. This is a most exacting standard." *United States v. Awan,* 966 F.2d 1415, 1426 (11th Cir. 1992).

Defendant challenges paragraphs 24 and 25 of the Indictment as surplusage because he believes the language is prejudicial and potentially confusing to the jury. Def.'s Mot. (Doc. 55) at 1-3. Those paragraphs state as follows:

>   24. An additional imaging procedure, called intravascular ultrasound (or "IVUS"), can be performed together with cardiac catheterization to obtain detailed images of the walls of the blood vessels. IVUS was available at East Alabama Medical Center where MITCHELL practiced but he did not regularly utilize IVUS.
>
>   25. Fractional Flow Reserve (or "FFR") is another procedure that can be performed together with cardiac catheterization to measure blood pressure and flow through a specific part of the coronary artery and thereby assist in determining whether to perform angioplasty or coronary stenting for intermediate blockages. FFR assists a cardiologist in determining whether a stenosis visible on an angiogram is significantly restricting blood flow in the artery. FFR was available to MITCHELL but he did not regularly utilize FFR.

Ind. (Doc. 1) at ¶¶ 24, 25.  Defendant asserts that these paragraphs "infer" that he "is somehow not treating his patients in accordance with medical standards because he does not utilize the referenced procedures[.]"  Def.'s Mot. (Doc. 55) at 2.  He maintains that "those procedures are not yet commonly used by cardiologists and certainly not indicative of any lower standard of care, much less relevant to guilt of a criminal offense." *Id.* at 3.

In response, the Government asserts that the paragraphs do not in any way allege, or require as an inference, that Defendant's failure to utilize the identified procedures contravenes medical standards or procedures.  Gov't's Resp. (Doc. 65) at 3-4.  The Government explains that it plans to rely on an additional medical procedure utilized by one of its experts, quantitative coronary analysis, to prove its case.  Furthermore, the Government asserts, because it cannot know how Defendant will defend his case, "it cannot be said at this juncture that reciting the other types of diagnostic procedures Mitchell chose not to use in any way will

prejudice his ability to put on a defense or create any inflammatory impression with the jury." *Id*. at 4.

In order for the targeted language to be considered surplusage worthy of being stricken pursuant to the "most exacting standard" discussed above, Defendant has to show irrelevance and that the language is prejudicial or inflammatory. The undersigned finds that Defendant has failed to show that paragraphs 24 and 25 are irrelevant and prejudicial or inflammatory. Defendant is accused of entering false statements and entries into medical records relating to the insertion of medically unnecessary coronary stents in patients. Def.'s Mot. (Doc. 55) at 2. Defendant attempts to argue prejudice by inferring that paragraphs 24 and 25 indicate that he did not follow standard medical procedures by failing to use the intravascular ultrasonic test or the fractional flow reserve. However, the paragraphs merely state that such procedures were available but were not used. Defendant will have the opportunity at trial to present evidence about why such tests may not have been appropriate in any given circumstance, as well as why any alternative procedure he did use may have been consonant with accepted medical standards or the peculiarities of any given patient. Thus, the paragraphs in the indictment listing available procedures not used by the Defendant are not prejudicial or inflammatory.

Additionally, Defendant has failed to show that the paragraphs describing these two procedures are irrelevant to the crimes alleged in the indictment.

3

Evidence is considered relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401. Depending on the evidence adduced at trial, it is at least conceivable that the availability of two other procedures to aid the judgment of whether a coronary stent should be placed may be relevant to an accusation of healthcare fraud involving falsifying records related to performing unnecessary coronary stents.  As such, it is not "clear" that paragraphs 24 and 25 are irrelevant as required by *Awan*.[1]

The undersigned Magistrate Judge concludes that Defendant has failed to show that paragraphs 24 and 25 of the Indictment should be stricken as surplusage and that, therefore, the Motion to Strike Surplusage relating to these two paragraphs should be denied without prejudice at this time.

Defendant also challenges paragraph 26 of the Indictment as surplusage because, he asserts, it may confuse the jury.  Def.'s Resp. (Doc. 66) at 4. Paragraph 26 provides as follows:

---

[1]  In this context, the undersigned here notes the language in *Awan* concluding that, in certain circumstances, "it is proper to reserve ruling on a motion to strike surplusage until the trial court has heard evidence that will establish the relevance of the allegedly surplus language[.]"  966 F.2d at 1426. Indeed, it places the court in a difficult position to judge the relevance of language in the indictment where the court is mostly not privy to the evidence which will be offered at trial and, depending on the evidence adduced at trial, it is not inconceivable that the language could be relevant.  As such, the District Judge may consider, as in *Awan*, reserving ruling on the motion until after the close of evidence and "carefully prevent[ing] the jury from being prejudiced by the challenged allegations by providing the jury with only a summary of the indictment that [does] not include [specific] references" to matters Defendant has challenged at this stage as irrelevant and unduly prejudicial.  *See id.*

4

> 26. Medicare, Medicaid and private insurers would not pay for a coronary stent that was not "medically necessary" for the patient. It was generally accepted among cardiologists that a coronary stent was not "medically necessary" absent a diagnosis of at least a 70 percent (70%) lesion or 70% stenosis in the artery and symptoms of blockage.

Ind. (Doc. 1) at 8.  Defendant contends paragraph 26 "misleads the jury with a higher standard than the medical profession and/or the law requires and thereby prejudices the Defendant."  Def.'s Resp. (Doc. 66) at 4.  He asserts that paragraph 26 "suggests a 'bright line' test that a physician must see a 70% blockage in order for a stent procedure to be medically necessary."  Def.'s Mot. (Doc. 55) at 3.  However, Defendant maintains, no such "bright line" test exists and, indeed, the Government's own experts do not support the "bright line" rule he perceives in ¶ 26.  Moreover, he asserts, numerous factors other than the percentage of blockage inform the judgment whether such a procedure is medically necessary.  *Id.* at 3.

The Government asserts that paragraph 26 accurately recounts that the "prevailing guideline for placement of a stent is the 70% level" cited in the paragraph, as reflected in grand jury testimony by several cardiologists which has been provided to Defendant.  Gov't's Resp. (Doc. 65) at 4-6.  Further, the Government argues that in every count of the indictment the blockage assessed by Defendant was 70 percent or greater and that, therefore, Defendant's contentions regarding supposedly inconsistent opinions by the Government's experts are irrelevant.  *Id*. at 7-8.

Paragraph 26 does not state that a diagnosis of 70 percent or greater for a lesion or stenosis is the only time a stent would be medically necessary.  Instead it states that "it

5

was *generally* accepted among cardiologists" that absent a 70 percent diagnosis a stent would be unnecessary. Ind. (Doc. 1) at 8 (emphasis supplied). As such, Defendant's argument that the paragraph states a bright line rule and a higher medical standard that could confuse the jury is unpersuasive. Paragraph 26 merely alleges what is the "generally accepted" standard about what constitutes medical necessity in this domain. In asserting that something is "generally accepted," the language plainly recognizes that *specific* circumstances may warrant a different judgment about medical necessity. In any event, to the extent it is relevant, Defendant is free to rebut any assertion about what is "generally accepted" with evidence at trial. But it cannot be said, at this stage, that it is so likely the jury will be misled to conclude that a coronary stent could be performed only with a blockage of 70 percent or greater based only on the language of paragraph 26 such that the "most exacting standard" applicable to Defendant's motion has been satisfied.

The undersigned Magistrate Judge finds that Defendant has failed to show that paragraph 26 should be stricken as surplusage and that, therefore, Defendant's motion to strike paragraph 26 should be denied.

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Defendants' Motion to Strike Surplusage (Doc. 55) be DENIED.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before May 18, 2015. Any objections filed must specifically

identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 4th day of May, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE